Hilda C. CRAWFORD, widow, et al., Plaintiffs,

v.

Paul COURTNEY, Thomas Dillow, Edwin F. Pope and Floyd Simons, as Trustees of Bolivar Heights, West Virginia, Pentecostal Church or their successors in office, Defendants.

Civ. No. 70-6-M.

United States District Court, N. D. West Virginia.

Dec. 31, 1970.

James E. Crawford, Baltimore, Md., for plaintiffs.

Peter L. Chakmakian, Harpers Ferry, W. Va., for defendants.

## MEMORANDUM

MAXWELL, Chief Judge.

All of the parties before this Court, both plaintiffs and defendants, are parties defendant in a condemnation proceeding before the Circuit Court of Jefferson County, West Virginia.

Chronologically, according to the initial pleading of plaintiffs here, a state court condemnation action affecting certain land in Jefferson County, West Virginia, was commenced on June 15, 1970. Plaintiffs allege that these condemnation proceedings were not contested and that the sum of $29,400.00 was deposited by the State of West Virginia with the Circuit Court of Jefferson County. Plaintiffs seek to " * * * prove through proper evidence that they are entitled to the sum deposited in escrow, $29,400.00, in Jefferson County Court, West Virginia."

The defendants in this Court have filed their motion to dismiss insisting that "* * * all matters and issues involved herein are involved in and fully determinable by proceedings already pending in the Circuit Court of Jefferson County, West Virginia, * * * "

Chronologically, according to the affidavit of Mary L. Riggleman, Clerk of the Circuit Court of Jefferson County, which is attached to defendants' motion to dismiss, the West Virginia Department of Highways filed a petition in condemnation in said Circuit Court on the 27th day of May, 1970. According to the heading of the affidavit of the Circuit Clerk of Jefferson County, the style of the condemnation litigation is "West Virginia Department of Highways and William S. Ritchie, Jr., West Virginia Commissioner of Highways, Petitioners, vs. Civil Action No. 1504, Paul Courtney, Thomas Dillow, Edwin F. Pope, and Floyd Simons as trustees of Bolivar Heights, West Virginia, Pentecostal Church or their successors in office, Hilda C. Crawford, widow; Ernest S. Crawford and Jenny Crawford, his wife, Thea Lucas and Melvin Lucas, her husband; Dorothy Piper and William Piper, her husband; Hilda Blaylock and Fred Blaylock, her husband; Leroy Crawford, widower; Larry Leroy Crawford; Deborah C. Crawford, and infant under the age of twenty-one years and Ernes Steven Crawford, an infant under the age of twenty-one years, defendants."

The affidavit of the Clerk of the Circuit Court of Jefferson County further states that on June 25, 1970, $29,-400.00 was deposited with the clerk's office, "* * * with notice of deposit received in said office on the 27th day of June, 1970."

The Circuit Clerk's affidavit in support of the motion to dismiss in this Court further alleges that "On the 23rd day of July, 1970, Petition and Application to the Court for an Order directing the Clerk of the Circuit Court of Jefferson County to distribute and release to the said Co-Defendants the entire condemnation award of Twenty Nine Thousand, Four Hundred Dollars ($29,-400.00), paid into said Court by the West Virginia Department of Highways and by virtue of Co-Defendants superior right and claim to said award over any other Claimant, if any."

The Clerk's affidavit concludes that on August 4, 1970, a motion for continuance was filed, stating that pro-

ceedings had been instituted in this Court, between the co-defendants in the state condemnation action. Apparently the Circuit Court of Jefferson County stayed the state court condemnation distribution action on the strength of said motion for continuance.

In addition to their motion to dismiss, the defendants have also answered, and following a motion for extension of time to plead by Hilda C. Crawford, plaintiff, the Court received and docketed a "Request for Hearing" by plaintiff, as to defendants' motion to dismiss, and a further "Motion to Retain Jurisdiction."

The issues raised on defendants' motion to dismiss have been briefed by counsel for the respective parties.

Regardless of the apparent confusion of dates in the pleadings, there is no question or doubt that the subject matter of the litigation in this Court is also the subject matter of litigation in the Circuit Court of Jefferson County, West Virginia. Regardless of the confusion of dates there is no question that the parties in this Court, both plaintiffs and defendants, are the parties defendant in the action pending before the Circuit Court of Jefferson County, West Virginia. Also, regardless of any confusion arising from the pleadings before this Court, there is no question that the litigation in the Circuit Court of Jefferson County, West Virginia, is in fact an exercise of the power of eminent domain by the "West Virginia Department of Highways and William S. Ritchie, West Virginia Commissioner of Highways," and that this Department and its Commissioner are a substantial, active and acting arm of the State of West Virginia.

Further, regardless of any confusion that may be apparent from the pleadings in this case, there is no question that the real estate in which the parties before this Court claim an interest, has proceeded, through the condemnation action, to ownership in a department of the State of West Virginia; the assets and proceeds have been deposited with the state court, and the sole and only step yet remaining to be considered in that court is the proper distribution of the "just compensation" awarded and paid for the taking of the land.

Plaintiffs urge in their "Declaration," that jurisdiction in this Court is based on " * * * the requisite diversity of citizenship and amount in controversy are present as per Title 28, Section 1332 (a), U.S.C.A." The plaintiffs allege that they " * * * have at all times been residents and citizens of the State of Maryland. The defendants have at all times been residents and citizens of the State of West Virginia," and "the matter in controversy has a value of $29,400.00, inclusive of interest and costs."

Plaintiffs here seek the funds on a theory that the property subjected to the condemnation proceedings was conveyed for the purpose of providing a place of worship and that subsequent events caused the real estate title to revert to and revest in the grantors, their heirs and assigns, in fee simple. The defendants before this Court are trustees of the church property that is located on the real estate and by implication at least are the owners of the land involved in the condemnation proceedings by virtue of the conveyance through which plaintiffs claim the reversionary interest.

The statutory procedure in West Virginia is more than an adequate remedy in the proper disposition of condemnation proceeds. West Virginia Code, Section 54-2-18, provides in part as follows:

"If it shall appear that the petition states the persons or classes of persons, who, in the opinion of the applicant, are vested with the superior right or claim of title in the property, or interest or right therein, condemned or sought to be condemned or in the amount allowed or to be allowed by the report of the condemnation commissioners, or the verdict of a jury, if there be one, and it does not appear from the record or otherwise that there is any denial or dispute,

by any person or party in interest, of such statement in the petition, the court or judge may direct that the money paid into court, after withholding therefrom any sum necessary for payment of any taxes which are a lien upon the property, interest, or right, be disbursed and distributed in accordance with the statement in the petition, among the persons entitled thereto, except that with respect to any persons appearing to be infants, incompetents, incarcerated convicts, or under any other legal disability, the court or judge shall inquire into their rights or claims, independent of any statement in the petition, and any order for disbursement or distribution shall conserve and protect the rights or claims of such persons in and to the money paid into court.

If it shall appear to the court or judge, from the record or otherwise, that there exists a controversy among claimants to the money paid into court, or to the ownership of the property, or interest or right therein, condemned or sought to be condemned, the court or judge shall enter an order setting a time for hearing the case and determining the rights and claims of all persons entitled to the money paid into court or to any interest or share therein. To aid in properly disposing of the money, the court or judge may appoint a commissioner to take evidence of the conflicting claims. The court or judge may direct publication to be made requiring all who are interested to appear at the time set for hearing the case to present their respective claims. Such costs shall be allowed to the prevailing persons as the court or judge shall direct. Upon a determination by the court or judge of the rights and claims of the persons entitled to the money paid into court, with or without a report of such commissioner, judgment shall be entered directing the disbursement or distribution, after withholding for taxes as provided in the next preceding paragraph, to the persons en-

titled thereto, provided that the rights or claims of persons under legal disability shall be protected as provided in the next preceding paragraph."

Parenthetically, accompanying the plaintiffs' "Declaration" is a separate document entitled "Prayer for Jury Trial," and in this brief document the following is sought:

"The Plaintiff prays a trial by jury in the above captioned case."

While the issue is not necessarily important to the questions now before the Court, it would appear that West Virginia Code, Section 54–2–18, places the settlement of controversy among claimants as to the money paid into the court in "the court or judge," who " * * * may appoint a commissioner to take evidence of the conflicting claims." Apparently, under this phase of West Virginia eminent domain law, the issues are determinable by "the court or judge," and not issues resolvable by jury trial. Plaintiffs would seek to obtain in this forum relief that is in addition to relief offered in the state system.

Again, the issue is not fundamental to the disposition of the questions squarely presented to the Court in this instance, but reference should be made to 27 Am.Jur.2d, Section 381, Jurisdiction and Procedure in Federal Courts.

" * * * and whether condemnation is affected by judicial proceedings or other statutory process, a federal court must necessarily follow the procedure prescribed by the state statutes."

The precise issue presented to this Court is whether these out of state property owners whose property is being condemned by the West Virginia Department of Highways and its Commissioner are entitled to maintain in a federal court an original action for distribution of the condemnation award, while the condemnation proceedings, concluded as to the awarding of just compensation and pending solely on the issue of the distribution of that award among

competing claimants, is still pending in a state court.

"Applying the rules that in determining whether the requisite diversity of citizenship exists for the purpose of removing a civil action from a state court to a federal court, the courts look to the citizenship of the real parties in interest, and that a state is not a citizen within the meaning of the diversity statute, the courts, in a number of condemnation proceedings brought by a state or state agency against property of a noncitizen, in finding that the state was a real party in interest, held that the action could not be removed from a state court to a Federal District Court on the ground of diversity of citizenship." Annot., 4 A.L.R. Fed. 236, 247–48 (1970).

"On the ground that under the Eleventh Amendment to the Federal Constitution the judicial power of the United States does not extend to any suit commenced against one of the United States by citizens of another state, it has been held that an out-cf-state property owner is not entitled to maintain an original action in a Federal District Court for relief against the taking of his property by a state, or an agency thereof, where the state is the real party in interest." *Id.* at 264.

The situs of the state court litigation is proper from the standpoint of the location of the real estate subjected to the state's power of eminent domain. There is no reason to believe and indeed the pleadings in this litigation fail to allege or suggest that the state court system in Jefferson County, West Virginia, is incapable of rendering a proper and fair distribution of the funds.

In this litigation the parties have succeeded in the awarding of just compensation for the land taken; the title to real estate has presumably vested in a department of the State of West Virginia which is the condemning authority; and it would be entirely inappropriate for this Court, midway in that state court litigation, to inject itself, especially when the judicial arm of the state court system has been given effective statutory prerogatives to settle the competing claims of property owners with a minimum of expense and time in litigation.

Aside from the law as stated, it is an interesting note to observe that the American Law Institute has considered the question presently before the Court in their proposed federal jurisdictional offerings. Section 1213(b) (6) of the ALI statutory proposals includes provisions that actions for the condemnation of private property under state law or for the award of compensation therefor shall not be removed to the federal court system.

For the reasons expressed in this opinion an order may be entered granting the defendants' motion to dismiss.